IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|   |   |   |
|---|---|---|
| SCHAWNITA N. O'DELL, | ( | |
| | ( | |
| Plaintiff, | ( | |
| | ( | |
| v. | ( | 1:12-cv-985 (JCC/IDD) |
| | ( | |
| DEUTSCHE BANK NATIONAL TRUST | ( | |
| COMPANY, AS TRUSTEE OF THE | ( | |
| INDYMAC MORTGAGE LOAN TRUST | ( | |
| 2006-1, ASSET-BACKED | ( | |
| CERTIFICATES, SERIES INDB | ( | |
| 2006-1, | ( | |
| | ( | |
| Defendant. | ( | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Motion to
Dismiss and/or for Summary Judgment [Dkt. 13] (hereafter
referred to as the "Motion") of Deutsche Bank National Trust
Company, as Trustee of the IndyMac Mortgage Loan Trust 2006-1,
Asset-Backed Certificates, Series INDB 2006-1 (hereafter
referred to as "Defendant").  For the following reasons, the
Court will grant summary judgment in favor of Defendant as to
all counts of the Amended Complaint.

**I. Background**

This dispute is, in essence, predicated upon a
residential foreclosure.  On or about March 6, 2006, Home
Savings & Trust Mortgage (hereafter referred to as "Home

1

Savings") agreed to make a loan to Plaintiff Schawnita N. O'Dell in the amount of $295,920.000. A promissory note was executed (hereafter referred to as the "Note"), secured by her principal residence.[1] [Dkt. 13-2.] Home Savings is listed as "Lender" on the Note. (Note ¶ 1.) The terms of the Note allowed for it to be transferred freely. (*Id.*) The portion of the Note entitled "Borrower's Promise to Pay" and states:

> [Borrower] will make all payments under this Note in the form of cash, check or money order. [Borrower] understand[s] that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."[2]

(*Id.*) The Note also provided that "anyone who takes [the] Note by transfer and who is entitled to receive payments" would inherit the powers of the Note Holder. (*Id.*)

A Deed of Trust (hereafter referred to as the "Deed of Trust") was also executed. [Dkt. 13-3.] Mortgage Electronic Registration System, Inc. (hereafter referred to as "MERS") is named as beneficiary in the Deed of Trust, acting as nominee for Home Savings and their "successors and assigns."[3] (Deed of Trust

---

[1] Although the original Note itself was subsequently lost, copies of the Note remain, one of which was submitted by Plaintiff in accompaniment with their Amended Complaint. Neither party disputes its authenticity as a true copy of the original Note.

[2] It bears mentioning that the same section of the Note also included an express promise to pay the principal plus interest in return for the loan. (*Id.*)

[3] MERS is a national electronic registry system that tracks the holders of the beneficial ownership interests in mortgage loans and services the loans that are registered with it.

1.)  Gary P. McInturff (hereafter referred to as "Mr. McInturff") was named as trustee, for the benefit of MERS, as beneficiary.  (*Id.*)  The section in the Deed of Trust entitled "TRANSFER OF RIGHTS IN THE PROPERTY" reads in part:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(Deed of Trust 2-3.)  The Deed of Trust employed straightforward language regarding transferability, providing that:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the Loan Servicer) that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law...

(*Id.* at 8.)  Similarly, the section entitled "Substitute Trustee" states:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the

title, power and duties conferred upon
Trustee and by Applicable Law.

(*Id*. at 6.)  The Deed of Trust bears Plaintiff's signature as

Borrower. (*Id*. at 11.)  A "Fixed/Adjustable Rate Rider –

Interest Only Period" is also appended to the Deed of Trust.

(*Id*. at 12-18.)  It was, by its terms, also executed on March 6,

2006, and bears Plaintiff's signature. (*Id*. at 18.)

Although there is little disagreement regarding the

initial origination and execution of the loan, the parties

disagree as to what took place thereafter.  Defendant states

that the Note was "endorsed in blank by Home Savings" and

assigned to IndyMac Bank, F.S.B. (hereafter referred to as

"IndyMac Bank"). (Def. Mem. 5; Note 6.)  According to Defendant,

"Home Savings... sold the Loan to IndyMac Bank... on March 24,

2006, without recourse." (Def. Supp. Mem. 2.)  In the sworn

affidavit of Charles Boyle (hereafter referred to as "Mr.

Boyle"), Vice President of Default Risk Management Litigation

for OneWest Bank, F.S.B. (hereafter referred to as "OneWest"),

Mr. Boyle states that the following actions took place with

regard to the loan:

> At the time the loan was made to O'Dell on
> March 6, 2006, the beneficial interest
> holder was Home Savings & Trust Mortgage.
> M.E.R.S. is listed on the Deed of Trust as
> the beneficiary, acting for the benefit of
> the lender.  Thereafter, in 2006, the Note
> was sold to an investor, Deutsche Bank, as
> Trustee of the IndyMac Mortgage Loan Trust

2006-1, Asset-Back Certificates, Series INDB
2006-1.

(Boyle Aff. 2.)  In response to this Court's request for supplemental briefing, Defendant submitted an affidavit on behalf of Robert G. McKeever II (hereafter referred as "Mr. McKeever"), an employee of JAMS01, Inc., which does business as "Home Savings & Trust Mortgage." (McKeever Aff. ¶ 1.)  Mr. McKeever has worked in their closing/post-closing department since 2003 and "personally worked on the closing and post-closing of the mortgage loan made by Home Savings & Trust Mortgage to Schawnita N. O'Dell."[4] (*Id*. at ¶ 5.)  Mr. McKeever states that "on March 24, 2006, Home Savings & Trust Mortgage sold the loan to IndyMac Bank, F.S.B."[5] (*Id*. at ¶ 6.)  Mr. McKeever also states that "[o]n or about March 28, 2006, a good-bye letter notifying the borrower of the loan sale was mailed to the borrower at the property address." (*Id*. at ¶ 8.)  Defendant also emphasizes the presence of the allonge to the Note, which states that it is payable to IndyMac Bank, as evidencing the transfer.[6]  (Def. Supp. Mem. 2.)

---

[4] Mr. McKeever states that he has "personal knowledge of the facts set forth [therein the affidavit] and/or [he has] reviewed the books and records of Home Savings & Trust Mortgage with regard to the statements made..." (McKeever Aff. ¶ 2.)

[5] Mr. McKeever also states that "Home Savings & Trust Mortgage registered the change of ownership to IndyMac Bank, F.S.B. with [MERS] on March 28, 2006 in batch #3269091 and transmitted the loan file to IndyMac, F.S.B." (*Id*. at ¶ 7.)

[6] Plaintiff objects to and disputes the authenticity of the allonge to the Note. (Pl. Opp'n 3.)

The record demonstrates that, at closing, Home Savings notified Plaintiff of the intended transfer of the loan to IndyMac Bank.  Notice is reflected in a document entitled "Notice of Assignment, Sale or Transfer of Servicing Rights." The document, scheduled to take effect April 1, 2006, bears the signature of Mrs. O'Dell.  [Dkt. 21-2.]

After Plaintiff's loan was transferred to IndyMac Bank, IndyMac Bank thereafter securitized the loan.  It was pooled together with other mortgages into a trust, ultimately becoming an asset in the IndyMac Mortgage Loan Trust 2006-1, Asset-Backed Certificates, Series INDB 2006-1 (hereafter referred to as "the IndyMac 2006-1 Trust" or "the Trust"). (Def. Mem. 4.)

> IndyMac Bank, F.S.B., as Seller and
> Servicer, placed the loan into a trust, as
> evidence by that certain Pooling & Servicing
> Agreement dated as of June 1, 2006, and the
> IndyMac Mortgage Loan Trust 2006-1, Asset-
> Backed Certificates Series INDB 2006-1.
> Deutsche Bank National Trust Company was the
> Trustee and Supplemental Interest Trust
> Trustee under the PSA.

(Def. Mem. 4.)  The IndyMac 2006-1 Trust was formed under a June 1, 2006 Pooling and Servicing Agreement [Dkt. 16-1] (hereafter referred to as "the PSA") and intended to "consist of a segregated pool of assets consisting of the Mortgage Loans and certain other related assets subject to [the PSA]." (PSA. 2.) Under the terms of the PSA, IndyMac Bank remained loan servicer

6

of loans placed in the Trust, which would have included Plaintiff's loan. [Dkt. 21-3.] Deutsche Bank was to serve as trustee and supplemental interest trust trustee for the Trust.[7] Subsequently, beginning in 2006, IndyMac Bank performed all of the servicing obligations required by the PSA, which included the processing of payments made on loans in the IndyMac 2006-1 Trust. (Def. Supp. Mem. 3.)

In 2007, Plaintiff requested a loan modification from IndyMac Bank, which granted her request. [Dkt. 21-4.] A Loan Modification Agreement, bearing Plaintiff's signature, was executed. (2007 Loan Modif. Agree. 1-2.)

Plaintiff ardently disputes Defendant's version of the facts, and denies that any such sale or transfer of the Note from Home Savings to IndyMac took place. Plaintiff also denies that the loan was securitized and placed in the IndyMac 2006-1 Trust took place.[8]

The parties agree that IndyMac Bank was subsequently closed by the Office of Thrift Supervision (hereafter referred to as "the OTS") of the Federal Deposit Insurance Corporation (hereafter referred to as "the FDIC") on July 11, 2008 and the

---

[7] Deutsche Bank is also the principal Certificateholder of the Trust assets under the PSA. (Def. Supp. Mem. 6.)

[8] In disputing Defendant's version of the facts, Plaintiff relies in large part upon the argument that "there is no evidence to support [Defendant's version of the facts] other than the self-serving hearsay statement of the affiant, and those facts are contradicted by other documents." (Pl. Opp'n 3.)

FDIC was appointed as receiver of IndyMac Bank. On the same day, July 11, the OTS chartered a new institution, IndyMac Federal Bank, F.S.B. (hereafter referred to as "IndyMac Federal Bank"), and appointed the FDIC as conservator of those assets. [Dkt. 21-5.] IndyMac Federal Bank assumed the duty to perform the obligations of the failed financial institution, IndyMac Bank, including the obligation to serve as loan servicer with respect to Plaintiff's loan. (Def. Supp. Mem. 8.) As conservator for IndyMac Federal Bank, the FDIC itself continued to perform the functions that IndyMac Bank had performed prior to receivership, which included the servicing of Plaintiff's loan. (*Id*. at 3.) On November 24, 2008, the FDIC appointed a substitute trustee of the Deed of Trust. [Dkt. 11-4.]

In disputing Defendant's version of the facts, Plaintiff cites the November 24, 2008 Deed of Appointment of Substitute Trustee (hereafter referred to as "the 2008 Appointment"), through which the FDIC, as conservator for IndyMac Federal Bank, F.S.B., successor to IndyMac Bank, F.S.B., defined in the document as "party of the first part," substituted Equity Trustees, L.L.C. (hereafter referred to as "Equity Trustees"), defined in the document as "party of the second part," as substitute trustee for Mr. McInturff. Plaintiff calls particular attention to language in the 2008 Appointment that states that "WHEREAS, the party of the first

part is the owner and holder of the note secured by said Deed of Trust." (2008 Appointment 1.) Plaintiff contends that this is proof positive that the FDIC was the owner of the loan at that time, and argues that "[i]f the FDIC was the owner and holder of the note in 2008, it is a legal impossibility for the Defendant INDB 2006-1 trust to have owned the Note in 2006 (which it was legally required to do per its sworn SEC filings)." (AC 4.)

Defendant contends that the 2008 Appointment's representation that the FDIC is the owner and holder of the Note is erroneous, stating that the "document states, in error, that the FDIC was in fact the owner of the Note, which it was not. The Trust was the owner of the Loan." (Def. Supp. Mem. 4.) Defendant also contends that the "FDIC's conservatorship did not operate as a legally significant event with respect [to] the fundamental rights and obligations of the Plaintiff with regard to the Note and Deed of Trust." (*Id*. at 9.) Defendant states that IndyMac Bank was not the owner of the Note at the time of FDIC receivership, but rather the loan servicer according to the PSA. The loan itself was an asset of the IndyMac 2006-1 Trust. Therefore, the FDIC, acting as conservator for IndyMac Federal Bank, as successor to IndyMac Bank, could not have become owner of the Note in 2008.[9] (*Id*. at 8-9.)

---

[9] According to Defendant, "[t]he Plaintiff still owed the amounts due under the Note, and the property encumbered by the Deed of Trust continued to

Defendant states that the new institution, IndyMac Federal Bank, began to collect and process Plaintiff's payments made under the Note. (Def. Supp. Mem. 9.) In 2008, Plaintiff once again failed to make requisite payments on the Note. (*Id.* at 4.) According to Defendant, "[a]s a result of the default, the Loan Servicer (then, the FDIC, as Conservator for IndyMac Federal Bank, ... as Successor to IndyMac Bank...) had the right to initiate foreclosure proceedings on behalf of the owner, the Trust." (*Id.*) Thereafter, the FDIC, as conservator of IndyMac Federal Bank, "took steps to initiate a foreclosure proceeding (i.e. appointed a substitute trustee under the Deed of Trust.)"[10] (*Id.*)

On March 19, 2009, OneWest Bank became the servicer of Plaintiff's loan when it acquired substantially of the assets and the mortgage servicing rights of IndyMac Federal Bank from the FDIC, as conservator for IndyMac Federal Bank, as successor to IndyMac Bank.[11] [Dkt. 21-7.] After OneWest became the servicer of Plaintiff's loan, in August of 2009, Plaintiff signed another Loan Modification agreement with IndyMac Mortgage

---

secure Plaintiff's obligations under the Note. The Trust assets were not affected." (*Id.*)

[10] However, Defendant represents that the "FDIC...did not – and could not – own the Note, because IndyMac Bank ... did not own it at the time the FDIC stepped into its shoes." (*Id.*)

[11] Plaintiff concedes the truthfulness of this factual statement with the caveat that the statement reflects the truth "as long as [OneWest Bank] was lawfully servicing the loan on behalf of the owner of the loan – not an imposter." (Pl. Opp'n 4.)

Services, a division of OneWest Bank, F.S.B. [Dkt. 21-8] (2009 Loan Modif. Agree. 1-2.)

The parties agree that, in 2011, Plaintiff was in default of the loan and was unable to reach any resolution to avoid foreclosure with OneWest Bank, *i.e.*, the servicer of her loan.[12] (AC 2.)

In August of 2011, the Deed of Trust associated with Plaintiff's loan was transferred from assignor MERS, as nominee for Home Savings, to assignee Deutsche Bank National Trust Company, as trustee for the IndyMac 2006-1 Trust. (2011 Assignment 1.) The Assignment of Deed of Trust (hereafter referred to as "the 2011 Assignment") [Dkt. 11-5] purports to have become effective on August 25, 2011. Mr. Boyle represents that:

> In August of 2011, M.E.R.S. assigned the Deed of Trust to Deutsche Bank, as Trustee of the IndyMac Mortgage Loan Trust 2006-1 ... so that the servicer, OneWest Bank FSB, could initiate foreclosure proceedings against the property securing the Note due to a substantial payment default by O'Dell.

(Boyle Aff. 2-3.)

On August 27, 2011, Deutsche Bank, as trustee for the IndyMac 2006-1 Trust, appointed a successor trustee under the

---

[12] Plaintiff concedes the truthfulness of this factual statement with the caveat "that One[W]est was, given all the information Plaintiff had, the lawful servicer of the loan." (Pl. Opp'n 4.)

Deed of Trust.[13] [Dkt. 11-2.]  Wittstadt Title & Escrow Company,

L.L.C. ("Wittstadt") was appointed by Defendant as substitute

trustee for "Gary P. McInturff, and all others who may have been

appointed prior to the effective date hereof." (Witt.

Appointment 1.)  Defendant is described in the document as "the

current holder[] of the Note described [therein] or secured by

the aforesaid Deed of Trust" and "Noteholder[]" (Witt.

Appointment 1-2.)  The document itself was executed by OneWest

Bank as attorney in fact for Deutsche Bank, as trustee of the

IndyMac 2006-1 Trust.[14] (Witt. Appointment 2.)

        Thereafter, on August 29, 2011, prior to foreclosure

and pursuant to Va. Code § 55-59.1, OneWest Bank provided notice

to Plaintiff that the original Note was unavailable, lost, or

could not be produced.[15]  The Notice of Unavailable Note [Dkt.

11-3] (hereafter referred to as the "Notice Letter") was sent on

behalf of OneWest Bank, described therein as attorney in fact

for Deutsche Bank, as trustee of the IndyMac 2006-1 Trust under

the PSA, the "present owner and holder of the Note made by

you..." (Lost Note Not. 1.)  The Notice Letter informed

---

[13] This Deed of Appointment of Substitute Trustees "was recorded in the land records office for Prince William County as Instrument number 201109270079088 on August 27, 2011." (Def. Mem. 5.)

[14] Plaintiff agrees that this action took place, though they deny "that Deutsche Bank was legally entitled to so act." (Pl. Opp'n 4.)

[15] Plaintiff concedes that this factual statement is true, though they dispute the content of the notice to the extent that their concession of truthfulness "does not in and of itself make the hearsay statement within the notice is / was true (sic): that the Deutsche Trust was the owner and holder of the note (a legal determination)(it was not the holder as the note is lost – see Ex E ¶6, lost note affidavit, AC Ex C – lost note letter). (Pl. Opp'n 4.)

Plaintiff that the letter was an attempt to collect her debt and that a request for sale pursuant to the terms of the Deed of Trust would be made to the substituted trustee within fourteen days of the mailing of the Notice Letter. (*Id*.)  The Notice Letter further informed Plaintiff that if she believed that she was subject to a claim by a person other than the beneficiary described therein, Plaintiff could petition the Circuit Court of the county or city where the secured property lies for an order requiring the beneficiary to provide protection against any such claim. (*Id*.)

On January 19, 2012, Plaintiff, through retained counsel in this matter, submitted a Qualified Written Request [Dkt. 15-8] (hereafter referred to as the "QWR") to Wittstadt pursuant to 12 U.S.C. § 2605(e) of the Real Estate Settlement Procedures Act (hereafter referred to as "RESPA"), and a request for Validation of Debt (hereafter referred to as "VoD") pursuant to 15 U.S.C. 1692(g) of the Fair Debt Collection Practices Act (hereafter referred to as the "FDCPA").  Therein, Plaintiff requested a copy of the Note, as well as any documents evidencing an assignment of the Note or Deed of Trust. Plaintiff also requested the name, address, and telephone number of the present owner of the obligation, or, in the event that the then-creditor differed from the original creditor, a chain of ownership of the Note and Deed of Trust. (QWR/VoD 1.)

Wittstadt responded to Plaintiff's requests on January 20, 2012, providing copies of the Note, Deed of Trust, and 2011 Assignment of the Deed of Trust from MERS to Defendant. Wittstadt also provided a pay-off ledger indicating a principal balance of $344,273.67 to Plaintiff's account. [Dkt. 15-9.]

According to Defendant, a Lost Note Affidavit "was provided to the Plaintiff from the attorney conducting the foreclosure advising that the original Note could not be found." (Def. Supp. Mem. 7.) Although the document itself is undated, it bears a notary stamp dated March 30, 2012. The Lost Note Affidavit is based upon the statements of Aaron Brown (hereafter referred to as "Mr. Brown"), Vice President for OneWest, and explains that the Note was sold by Home Savings and made part of the IndyMac 2006-1 Trust, "the legal and lawful owner of the note."[16] (Lost Note Affidavit 1.)

On April 30, 2012, Plaintiff's property was foreclosed. (AC 2.) The foreclosure auction was conducted by Wittstadt. (*Id*.) According the Amended Complaint, MHZTH Investments, L.L.C. (hereafter referred to as "MHZTH") and Carderock Enterprises, L.L.C. (hereafter referred to as "Carderock") "purchased the Property at the foreclosure sale, were grantees on the Trustees' Deed, and [MHZTH] evicted

---

[16] Defendant states that, although the Lost Note Affidavit does not fully articulate chain of ownership, it nevertheless achieved the intended end result of informing Plaintiff of the IndyMac 2006-1 Trust's ownership of the Note. (Def. Supp. Mem. 7 fn. 6.)

Plaintiff from the Property." (AC 4.)  Neither MHZTH nor
Carderock are parties to the instant proceeding.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a
court to dismiss those allegations which fail "to state a claim
upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A
Rule 12(b)(6) motion tests the legal sufficiency of the
complaint.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir.
2008).  A court reviewing a complaint on a Rule 12(b)(6) motion
must accept well-pleaded allegations as true and must construe
factual allegations in favor of the plaintiff.  *See Randall v.
United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading
standards under Rule 8, which require only "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require
"detailed factual allegations," a plaintiff must still provide
"more than labels and conclusions" because "a formulaic
recitation of the elements of a cause of action will not do."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)
(citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Defendant has moved to dismiss the Amended Complaint or, alternatively, for summary judgment. In their Opposition to Defendant's Motion, Plaintiff determined that they would treat the Motion as moving solely for dismissal. Defendant maintains in their Response to Defendant's Opposition that their motion constitutes movement for both dismissal and summary judgment. Consequently, the Court must make a determination as to whether it is appropriate to broach summary judgment at this time.

The Court believes that the instant matter presents a nearly analogous scenario to those posed in *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253 (4th Cir. 1998) and *Tsai v. Maryland Aviation*, 306 F. App'x 1 (4th

Cir. 2008). The defendant in *Laughlin* captioned its pleading as a "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment," and submitted affidavits and other materials with its motion. Upon appeal, the Fourth Circuit reasoned that "[o]n the basis of [Laughlin's] own actions - captioning her memorandum and filing affidavits - it appears that Laughlin had actual notice that the motion could be disposed of as one for summary judgment." *Laughlin*, 149 F.3d at 261. Similarly, in *Tsai*, the defendant captioned its motion as a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," and attached seven exhibits. Defendant in that case responded by filing a "Plaintiff's Memorandum of Points and Authorities In Opposition To Defendant's Motion to Dismiss or For Summary Judgment," and attached an EEOC record as an exhibit to his memorandum. The Fourth Circuit held that "[the plaintiff] cannot plausibly argue that he lacked notice that [the defendant] was moving for summary judgment, given that he acknowledged as much in the title of his responsive pleading and even put additional evidence before the court of his own volition." *Tsai*, 306 F. App'x at 5.

In this case, Plaintiff filed an "Opposition to Motion to Dismiss and/or Summary Judgment," a clear indication that they had notice that Defendant was moving for summary judgment. Although the Opposition contains a footnote stating that

Plaintiff would treat Defendant's Motion as one for dismissal because "no standard of review for summary judgment is provided, nor is summary judgment at any time later addressed," it is clear on the face of Defendant's Motion that they are also moving for summary judgment. Simply because Plaintiff has unilaterally decided to treat Defendant's Motion solely as a 12(b)(6) motion to dismiss does not annul the fact that Defendant has moved for summary judgment in the alternative and has submitted several exhibits in support of summary judgment. Furthermore, Plaintiff submitted additional evidence before the Court of his own volition. The foregoing considerations lend significant credence to the notion that Plaintiff had actual notice that the motion could be disposed of as one for summary judgment.

Under the circumstances of the instant proceeding, Plaintiff cannot plausibly argue that they lacked notice that Defendant was moving for summary judgment. Plaintiff acknowledged as much in the title of their responsive pleading and even put additional evidence before the court of their own volition.[17] If Plaintiff's counsel thought they needed additional discovery, they could have made a motion under Rule 56(f), which permits a court to order additional discovery where a party lacks sufficient facts to oppose a motion for summary

---

[17] The Court also notes that both parties were provided with an opportunity to submit supplemental briefing.

judgment. *See* Fed.R.Civ.P. 56(f).  Indeed, the Fourth Circuit

has held that the nonmoving party cannot complain that summary

judgment was granted without discovery unless that party had

made an attempt to oppose the motion on the grounds that more

time was needed for discovery or moved for a continuance to

permit discovery before the district court ruled. *See Evans v.*

*Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th

Cir. 1996)(citing *Nguyen*, 44 F.3d at 242).  Counsel failed to

make such a motion or oppose Defendant's motion on those

grounds, and in doing so has waived any argument for additional

discovery.[18] *See Laughlin*, 149 F.3d at 261 (citing *Nguyen v. CNA*

*Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).

   Furthermore, Plaintiff may not successfully argue that

the Court had an obligation to formally notify them that the

motion would be treated as one for summary judgment. "The

district court, while it clearly has an obligation to notify

parties regarding any court-instituted changes in the pending

proceedings, does not have an obligation to notify parties of

the obvious." *Tsai*, 306 F. App'x at 5 (citing *Laughlin*, 149

F.3d at 261).

---

[18] The Second Circuit Court of Appeals has similarly explained that "[a]
reference to Rule 56(f) and to the need for additional discovery in a
memorandum of law in opposition to a motion for summary judgment is not an
adequate substitute for a Rule 56(f) affidavit ... and the failure to file an
affidavit under Rule 56(f) is itself sufficient grounds to reject a claim
that the opportunity for discovery was inadequate." *Paddington Partners v.*
*Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment.  *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).  In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine

whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

In their Amended Complaint, Plaintiff alleges four causes of action: Count I, violation of the Truth in Lending Act notice requirement (pled in the alternative to Count II), Count II, equitable action to rescind foreclosure (pled in the alternative to Count I), Count III, fraud, and Count IV, unjust enrichment.[19] The Court will address Plaintiff's causes of action in the order in which they have been alleged in the Amended Complaint.

### 1. <u>Count I: Violation of TILA Notice Requirement</u>

The stated purpose of the Truth in Lending Act (hereafter referred to as "TILA") is to provide for the informed use of credit by consumers. *See* 15 U.S.C. § 1601(a). TILA provides for a private right of action for civil liability against any creditor that fails to comply with any requirement imposed under TILA.[20] *See* 15 U.S.C. § 1640(a). Of particular

---

[19] In addition to the stated claims of the Complaint and Amended Complaint, Plaintiff has accused Defendant of various unjust and unlawful actions undertaken in order effectuate the sale of her residence, including the creation of fraudulent documents and misleading market regulators.

[20] Section 1602(g) states in part that "[t]he term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a

relevance to the instant proceeding, Section 131(g), codified at 15 U.S.C. § 1641(g), and entitled "Liability of Assignees," requires that an entity notify the borrower in writing when it purchases or is assigned the beneficial interest in their loan on a property within thirty days of when the loan is transferred. *See* 15 U.S.C. § 1641(g)(1) ("not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer," including identity and contact information for new creditor, date of transfer, and instructions for how to reach an agent with authority to act on behalf of new creditor). Added as part of the 2009 amendments to TILA, § 1641(g) provides the statutory parallel to 12 C.F.R. § 226.39, the attendant implementation regulation. However, this subsection only applies to the "new owner or assignee of the debt." 15 U.S.C. § 1641(g). It also bears mentioning that § 1641(g) applies only to transfers prior to the May 20, 2009 effective date of the amendments to TILA that added it. *See Bradford v. HSBC Mortg. Corp.*, 829 F.Supp.2d 340, 353 (E.D.Va.

---

finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement ... Any person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter ..."

2011)(stating that "[n]othing in TILA indicates that this provision should be applied retroactively.")

If a new creditor fails to make this written disclosure, a borrower may seek actual damages sustained so long as the borrower is able to show detrimental reliance on the faulty disclosure. *See* 15 U.S.C. § 1640(a)(1); *see also Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001)(*en banc*)(requiring a showing of detrimental reliance when seeking actual damages under TILA). With regard to statutory damages, § 1641 provides that those damages "may not exceed with respect to actions based upon a violation of [§ 1641], the amount specified in [§] 1640 of this title; and with respect to all other causes of action, the sum of the amount of remaining indebtedness ... and the total amount paid by the consumer in connection with the transaction." *See* 15 U.S.C. § 1641(d)(2). Claims raised under TILA must be brought within one year of the occurrence of the alleged violation or they are therefore barred by the statute of limitations. *See* 15 U.S.C. § 1640(e).

Plaintiff's pleadings, although highly contentious and somewhat disarrayed, seemingly delineate multiple factual scenarios that would bear upon the significance of the 2011 Assignment. *See* Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). To be sure, Plaintiff has alleged manifold

23

wrongdoing on behalf of the entities that became associated with Plaintiff's loan.  In rejecting Defendant's version of the facts, Plaintiff has posited several distinct theories as to what they believe might have taken place with regard to the loan.

Plaintiff denies that the loan's purported transfer away from Home Savings in 2006 took place, and argues that the notion that the Deed of Trust could be properly assigned independent of the Note is "inconsistent with a well[-]established principle of law – an assignment of the deed of trust without the note is a nullity. Given Deutsche Bank, itself, proclaims this is an assignment of the deed of trust alone, it is a nullity." (AC 6.)  Plaintiff has also alleged that the 2011 Assignment is a fraudulent document, allegedly having been forged by employees of OneWest without the knowledge of MERS and Home Savings. (*Id*. at 4.)  It is the position of Plaintiff that, if the 2011 Assignment is fraudulent, "then Deutsche Bank did not become the successor in interest to the Lender and had no authority to invoke the power of sale and to appoint the substitute trustee." (*Id*. at 7.)  Plaintiff also contends that "[i]t is apparent from the exhibits that the FDIC owned the loan as of 2008, making an assignment in 2006 or in 2011 from [Home] Savings a legal impossibility."  (AC 9-10.) Plaintiff cites where 2008 Appointment states that "WHEREAS, the

party of the first part is the owner and holder of the note secured by said Deed of Trust."[21] (2008 Appointment 1.)

According to Plaintiff, Defendant first received an assignment of the beneficial interest in the loan through the 2011 Assignment, which purports to transfer the Deed of Trust from MERS, as nominee for Home Savings, to Defendant Deutsche Bank, as trustee for the IndyMac 2006-1 Trust. Plaintiff thus alleges that Defendant violated 15 U.S.C. § 1641(g) of TILA by failing to provide Plaintiff with the necessary notification of the transfer or assignment of her loan. Plaintiff states that "Deutsche Bank received an assignment of the beneficial interest in Plaintiff's mortgage on August 25, 2011" and that "[i]f the Assignment was, in fact, an assignment of any beneficial interest, then Deutsche Bank was required to give Plaintiff the required notice" within thirty days of receipt and make all the disclosures required by § 1641(g). (AC 8.) Plaintiff concludes that "Deutsche Bank failed to notify Plaintiff at all and therefore failed to make the requisite disclosures." (*Id.*) Plaintiff also states that the loan secures an interest in real estate which is used by Plaintiff as their principal dwelling

---

[21] As this Court recounted in its foregoing discussion of the factual background of this proceeding, Plaintiff bases this assertion on the text of the 2008 Appointment, through which the FDIC, as conservator for IndyMac Federal Bank, F.S.B., successor to IndyMac Bank, F.S.B., defined therein as "party of the first part," substituted Equity Trustees, defined therein as "party of the second part," as substitute trustee for Gary P. McInturff. (2008 Appointment 1.)

and contends that Defendant is a creditor within the meaning of § 1641(g).  If this Court is to believe the representations of the Plaintiff that the 2011 Assignment constitutes a transfer sufficient to trigger the § 1641(g) notice requirement, Plaintiff alleges that "Deutsche Bank was required to give Plaintiff the required notice." (AC 9.)

It is the position of Defendant that the "revised TILA provision on which Plaintiff relies – 15 U.S.C. § 1641 – does not apply to the facts of this case." (Def. Supp. Mem. 9.) Defendant argues that the triggering event for an obligation under § 1641 is that the mortgage loan itself be "sold or otherwise transferred or assigned to a third party." *See* 15 U.S.C. § 1641.  Defendant argues that "[Plaintiff]'s legal conclusions are erroneous" to the extent that Plaintiff asserts that TILA obligations arose as a consequence of the 2011 Assignment.  Defendant contends that Plaintiff's Note was securitized and assigned to Defendant in 2006, and that there was no assignment, sale, or other transfer of the Loan in 2011 to support a cause of action under TILA. (Def. Mem. 7; Def. Supp. Mem. 10.)  Defendant notes that, under Virginia law, a note holder has the right, but not obligation, to record an assignment at the time the loan was sold. *See* Va. Code § 55-66.01.  Defendant states that, in its discretion, IndyMac Bank "did not record an assignment of the Deed of Trust in the land

records office in 2006.  Pursuant to the PSA, neither did the

Trust, because the Loan was a [MERS] loan." (Def. Supp. Mem.

10.)

Defendant contends that the 2011 Assignment entailed

MERS, as nominee for Home Savings, merely assigning Plaintiff's

Deed of Trust to Deutsche Bank, as trustee for the IndyMac 2006-

1 Trust, and that such an action is insufficient to trigger the

TILA notice requirement.  (Def. Supp. Mem. 9-11; 2011 Assignment

1.)  Regarding § 1641(g) of TILA, Defendant argues that "[t]he

clear purpose behind the provision is to put homeowners on

notice of the party who is holding their mortgage loan – i.e.

the new creditor to whom the debt is owed." (Def. Mem. 7.)

Citing TILA's implementation regulations in support of their

position, Defendant specifically points to 12 C.F.R. § 226.39,

relating to mortgage transfer disclosures, and defining "covered

persons," *i.e.*, those entities required to provide disclosure,

as:

> any person, as defined in § 226.2(a)(22),
> that becomes the owner of an existing
> mortgage loan by acquiring legal title to
> the debt obligation, whether through a
> purchase, assignment or other transfer, and
> who acquires more than one mortgage loan in
> any twelve-month period.[22]

---

[22] "Person means a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit." 12 C.F.R. § 226.2.

12 C.F.R. § 226.39(a)(1).  Thus, Defendant argues that "to be

obligated to give the require notice, the covered person must

obtain legal title to the debt obligation – *i.e.* the entire

loan, not just a deed of trust." (Def. Mem. 7-8.) Defendant

believes that this position is supported by the exceptions to

the notice requirement, which provide that no notice is required

when:

> [t]he covered person acquires only a partial
> interest in the loan and the party
> authorized to receive the consumer's notice
> of the right to rescind and resolve issues
> concerning the consumer's payments on the
> loan does not change as a result of the
> transfer of the partial interest.

12 C.F.R. §226.39(c)(3).  Consequently, it is the position of

Defendant that the 2011 Assignment, which Defendant has asserted

merely involved the assignment of the Deed of Trust, does not

constitute an assignment, sale, or other transfer sufficient to

trigger TILA's § 1641(g) notice requirement, as Plaintiff's loan

itself had previously been transferred by Home Savings to

IndyMac Bank and subsequently placed in the IndyMac 2006-1 Trust

in 2006.

## i. Discussion

The Court will first address Plaintiff's denial that

the 2006 transfer from Home Savings to IndyMac Bank took place.

Plaintiff contends that Defendant's factual representations are

"self-serving" and their supporting documentation represents

"blatant fraud." (AC 12.) Plaintiff's threadbare, conclusory allegations that the various documents that have been submitted by Defendant are somehow fraudulent are not worthy of credence. The Court has not found any factual basis to support Plaintiff's allegations of documentary fraud. *See United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F.Supp.2d 593, 596 (E.D.Va. 2004)(noting that "[i]n the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails")(citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Felty v. GravesHumphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)("Trial judges have an affirmative obligation ... to prevent factually unsupported claims and defenses from proceeding to trial"). Plaintiff has not provided citation to any material capable of supporting their allegations regarding the nonexistence of the 2006 transfer from Home Savings to IndyMac Bank. Indeed, the record sufficiently demonstrates that the 2006 transfer from Home Savings to IndyMac Bank took place, and Plaintiff has not offered any substantive indication to suggest otherwise. The Court will reject and discount those portions of Plaintiff's arguments as to all Counts that rely on the non-existence or fraudulence of that transfer.

Addressing another threshold issue, Plaintiff contends that "it is clear from a review of the Deutsche Bank (sic) sworn

SEC filings and recently repudiated Assignment that this trust does not own the subject Loan."[23] (AC 9.)  To the extent that Plaintiff relies on the nonexistence of the 2006 transfer as a means to deny the IndyMac 2006-1 Trust's ownership of the loan, the Court will reject that argument on the basis of its preceding analysis of the issue.  This Court has reviewed the record, including the pleadings of the parties, exhibits, and sworn affidavits that have been submitted to the Court.  The Court finds that the IndyMac 2006-1 Trust's ownership of the subject loan has been satisfactorily established.[24]  The record discloses no factual basis for concluding that any other entity besides Defendant held the Note.[25]

As to Plaintiff's argument that the FDIC is the owner of the subject loan, the Court concludes that the 2008 Appointment mistakenly states that the FDIC owner and holder of the Note.  As the Court has found in its preceding analysis, at the time of FDIC receivership, the IndyMac 2006-1 Trust, not

---

[23] It is not clear to the Court why Plaintiff believes that Defendant has repudiated the 2011 Assignment.  Nevertheless, Defendant states that "Deutsche Bank did not repudiate the Assignment of Deed of Trust."  (Def. Mot. 11.)  The Court will reject Plaintiff's allegations that Defendant has repudiated the 2011 Assignment as having been insufficiently supported and delineated.

[24] Plaintiff relies substantially on the notion that the various documents indicating Defendant's ownership of the loan are "fraudulent..." (AC 6.)  As this Court has stated in its preceding analysis, the Court has not found any factual or evidentiary basis that supports Plaintiff's allegations of documentary fraud.

[25] To the extent that Plaintiff alleges that the subject loan was added to the IndyMac 2006-1 Trust after the cut-off date for the addition of new assets, Plaintiff has failed to support that allegation with evidence or relevant affidavits.  The current record offers no evidentiary or factual support for this allegation.

IndyMac Bank, was the owner of Plaintiff's loan. This notion is supported by the overwhelming strength of the record.[26] As IndyMac Bank was not then the owner of Plaintiff's loan at the time of FDIC receivership, the FDIC could not have thereafter become "owner and holder" as receiver. "[W]hen the FDIC becomes receiver of a failed institution, it steps wholly in the shoes of that institution, and accepts all assets and liabilities thereof." *Gulf Coast Bank & Trust Co. v. Valentine*, No. 5:11CV75, 2012 WL 1071277 at *9 (N.D.W.Va. March 29, 2012). As IndyMac Bank was then the loan servicer of Plaintiff's loan pursuant to the PSA, the FDIC would have continued in that capacity as Conservator for IndyMac Federal Bank. *See Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C., III*, 258 Va. 524, 528 (1999)("It is well settled that an assignee of a contract obtains his rights from the assignor and, thus, 'stands in the shoes' of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract"). Consequently, it is simply not possible that the FDIC could have been the owner and holder of the Note at the time of receivership, as the loan was then an asset of the IndyMac 2006-1 Trust.

---

[26] Plaintiff's allegations of impropriety on behalf of Defendant with regard to the various documents, exhibits, and affidavits that have been submitted in support of Defendant's position constitute the very sort of allegations, denials, and unsupported speculation incapable of withstanding a motion for summary judgment.

When questioned at hearing as to what entity Plaintiff believes to be the "actual owner" of Plaintiff's loan, Plaintiff was not even able to posit an alternative theory as to the identity of the entity that they now believe to be the owner. Plaintiff's conclusory assertions that the IndyMac 2006-1 Trust is not the owner of the loan are unsupported by the record, and Plaintiff has not presented any credible support for the notion that the subject loan was not placed in the IndyMac 2006-1 Trust in 2006.

The Court will now address Plaintiff's allegation that Defendant Deutsche Bank violated 15 U.S.C. § 1641(g) of TILA by failing to provide Plaintiff with the necessary notification of the 2011 Assignment, which purports to transfer the Deed of Trust from MERS, as nominee for Home Savings, to Defendant Deutsche Bank, as trustee for the IndyMac 2006-1 Trust.

The Court notes that the TILA provision relied upon by Plaintiff, requiring notice to borrowers of the sale, transfer, or other assignment of a loan, is a relatively recent addition, having only come into existence in 2009. Plaintiff's loan was transferred to IndyMac, and subsequently placed in the IndyMac 2006-1 Trust, in 2006.[27] As 15 U.S.C. § 1641(g) had not yet been implemented, there would have been no need for notice under that

---

[27] The Court notes that the 2006 transfer likely constitutes the sort of transaction that would have required TILA notice had § 1641(g) been in effect at the time, though the Court need not reach that issue within the context of the instant proceeding.

TILA provision.  At that time, the notice required to be provided to a borrower was a notice of transfer of servicing rights, pursuant to 12 U.S.C. § 2605 of RESPA.  It is also clear from the record that the required RESPA notice was provided to Plaintiff.[28]

It is equally clear that there was no assignment, sale, or other transfer of the loan in 2011 capable of sustaining the present cause of action under TILA.  By the time of the 2011 Assignment, as well as the implementation of the TILA provision upon which Plaintiff relies, Plaintiff's loan had long since been transferred by Home Savings to IndyMac Bank, and subsequently pooled by IndyMac Bank into the IndyMac 2006-1 Trust, for which Deutsche Bank serves as trustee under the PSA. TILA's implementation regulations, 12 C.F.R. § 226.39, relating to mortgage transfer disclosures, and defining "covered persons," *i.e.*, individuals required to provide disclosure, as:

> any person, as defined in § 226.2(a)(22),
> that becomes the owner of an existing
> mortgage loan by acquiring legal title to
> the debt obligation, whether through a
> purchase, assignment or other transfer, and
> who acquires more than one mortgage loan in
> any twelve-month period.

12 C.F.R. § 226.39(a)(1).  It is clear that the 2011 Assignment of Deed of Trust is not a sale, transfer, or other assignment of the loan, and incapable of sustaining a cause of action for a

---

[28] The Court need not discuss this issue further, as Plaintiff has not alleged a cause of action under RESPA in their Amended Complaint.

TILA violation.  Defendant was, at the time of the 2011
Assignment, already the legal and lawful holder of Plaintiff's
loan.

Furthermore, neither the note, nor the deed of trust,
nor any Virginia law cited by Plaintiff requires that
assignments of transfers of such instruments be recorded in the
county land records. *See Daugherty v. Diment*, 238 Va. 520, 385
S.E.2d 572, 574–575 (1989)(noting that the assignor was "not
required to obtain the consent of anyone" when the subject
contract included a clause specifying free assignability).

Plaintiff has argued that "the Deed of Trust cannot be
transferred without the Note" and that "assignment of the deed
of trust without the note is a nullity."  (Pl. Opp'n 3; AC 6.)
However, "the Fourth Circuit has rejected the notion that the
validity of a note or deed of trust is compromised by transfer
to another party." *Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617,
619 (4th Cir. 2011).  For over a century, it has been settled
that under Virginia law, interests in deeds of trust accompany
the promissory notes that they secure. In other words, "deeds of
trust and mortgages are regarded in equity as mere securities
for the debt, and whenever the debt is assigned the deed of
trust or mortgage is assigned or transferred with it." *Williams
v. Gifford*, 139 Va. 779, 124 S.E. 403, 404 (Va. Special Ct.App.
1924)(citing *McClintic v. Wise's Adm'rs*, 66 Va. (25 Gratt.) 448,

1874 WL 5664 (1874)); *see Stimpson v. Bishop*, 82 Va. 190, 1886 WL 2987, at *7 (Va. 1886)("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery.").

Plaintiff also argues that "Deutsche Bank is not the holder of the note – it is lost." (Pl. Opp'n 8.) However, Section 55–59.1 of the Virginia Code specifically states that:

> If a note or other evidence of indebtedness
> secured by a deed of trust is lost or for
> any reason cannot be produced ..., the
> trustee may nonetheless proceed to sale,
> provided the beneficiary has given written
> notice to the person required to pay the
> instrument that the instrument is
> unavailable and a request for sale will be
> made of the trustee upon expiration of 14
> days from the date of mailing of the notice.

Va.Code § 55–59.1(B). It is clear from Plaintiff's own submissions that they received adequate notice of the fact that the original Note could not be produced. Indeed, Plaintiff submitted with their Complaint a copy of the letter notifying her that the original Note could not be produced by Defendant, and that Defendant nonetheless intended to initiate foreclosure proceedings against Plaintiff, as required by Virginia Code § 55–59.1(B).[29]

---

[29] To the extent that Plaintiff may argue that production of the original Note should have been a prerequisite to foreclosure, Plaintiff merely espouses a recast "show me the note" theory, which has been widely rejected as "contrary to Virginia's non-judicial foreclosure laws." *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F.Supp.2d 714, 721 (W.D.Va.2011) (citation omitted). *Accord Minix v. Wells Fargo Bank*, 81 Va. Cir. 130, 2010 WL 7765589, at *4 (Fairfax

Finally, federal law explicitly allows for the creation of mortgage-related securities, such as the Securities Act of 1933 and the Secondary Mortgage Market Enhancement Act of 1984. Pursuant to 15 U.S.C. § 77r-1, "[a]ny person, trust, corporation, partnership, association, business trust, or business entity ... shall be authorized to purchase, hold, and invest in securities that are ... mortgage related securities." *Id.* § 77r-1(A)(1)(B). Significantly, foreclosures are routinely and justifiably conducted by trustees of securitized mortgages. *See Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F.Supp.2d 636, 641 (E.D.Va. 2010) *aff'd*, 441 F.App'x 202 (4th Cir. 2011). Furthermore, "[t]here is no legal authority that the sale or pooling of investment interest in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property." *Zambrano v. HSBC Bank USA, Inc.*, Civil Action No. 01:09-cv996, 2010 WL 2105164, at *2 (E.D.Va. May 25, 2010), *aff'd*, 442 Fed.App'x. 861 (4th Cir. 2011)(per curiam).

To survive summary judgment, a plaintiff must present "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting Fed.R.Civ.P. 56(e)). It

_____

Cnty. Aug. 24, 2010)(cautioning that courts should not "be creating a judicial foreclosure procedure when the legislature has mandated a non-judicial procedure to be appropriate").

is not enough "simply [to] show that there is some metaphysical doubt as to the material facts." *Id*. at 586.  Perhaps recognizing the weakness of their TILA claim, Plaintiff essentially conceded at hearing that it would be difficult to sustain a cause of action under § 1641(g).  As a consequence of the foregoing considerations, the Court grants summary judgment for Defendant as to Count I.[30]

## 2. Count II: Equitable Action for Rescission of Foreclosure

Plaintiff has also moved to rescind the foreclosure of the subject property through an equitable action.  The Court will now address Count II of Plaintiff's Amended Complaint.  To the extent that Plaintiff relies upon legal or factual circumstances rejected by this Court in its preceding discussion of Count I, the Court rejects those arguments while declining to recount the breadth of its analysis as to those issues.

Plaintiff has argued that Virginia law is inapplicable where a deed of trust provides "that there is one entity that can appoint a substitute trustee - the Lender, or its successor in interest."  (AC 3.)  This Court has found in its preceding analysis that, based on the current record, Defendant was the legal and lawful owner of the Note at the time of Wittstadt's appointment.  Furthermore, while parties may contract around the

---

[30] To the extent that Plaintiff argues that the 2011 Assignment is a forged or fraudulent document, the Court rejects that argument as unsupported.

standard rules applicable to negotiable instruments, both the
Note and the Deed of Trust demonstrate that the parties intended
to allow the documents to be freely transferable. *See* Va. Code
Ann. § 8.1A–302(a).  To the extent that Plaintiff argues that
the IndyMac 2006-1 Trust should have been unable to foreclose
due not having been the named "Lender" on the Deed of Trust
document itself, that argument is foreclosed by Fourth Circuit
precedent. *See Horvath*, 641 F.3d at 625 (under similar
circumstances, reading the term "Lender" as applying to any
subsequent purchaser in order to harmonize appointment provision
with other provisions of the deed of trust); *see also Hien Pham
v. Bank of New York*, 856 F. Supp. 2d 804, 814 (E.D.Va. 2012).

Plaintiff further contends that "[i]f the [August
2011] Assignment was not of the beneficial interest in the Note,
then Deutsche Bank did not become the successor in interest to
the Lender and had no authority to invoke the power of sale and
to appoint the substitute trustee." (*Id*. at 7.)  Therefore,
Plaintiff concludes, "the trustee was appointed by one with no
authority to so act, the appointment is void, the trustee did
not hold any valid interest, and the April 30, 2012, foreclosure
is voidable, if not void." (*Id*.)  Plaintiff further argues that
therefore "Wittstadt was not properly appointed as substitute
trustee and had no authority to conduct the foreclosure sale,
and Deutsche Bank had no right to invoke the power of sale."

(*Id.* at 10.)  Plaintiff concludes that "[i]f the documents were

unauthorized then the foreclosure sale of the Property was

invalid and *void ab init*io and the sale must be rescinded ..."[31]

(*Id.*)

Plaintiff's arguments are fatally flawed, as the

factual predicate upon which Plaintiff relies to impeach

Wittstadt's appointment does not represent the exclusive means

by which Defendant could have attained authority to appoint a

substitute trustee.  As this Court has noted in its preceding

analysis, based on the current record, Defendant had long since

become the lawful owner and holder of the Note by the time of

the 2011 Assignment, the action of which Plaintiff now

complains.  As the lawful owner and holder of the Note,

Defendant was authorized under the plain terms of the Note and

the Deed of Trust, as well as under well-established Virginia

law, (i) to appoint a substitute trustee, and (ii) to invoke the

power of sale given Plaintiff's default and thereby to direct

the trustee to initiate foreclosure.  In that sense, the Court

has not found any misconduct in Defendant's appointment of

Wittstadt as substitute trustee, either in the actions that

preceded that appointment or in the appointment itself.

---

[31] Plaintiff concedes that "[a]ny subsequent purchaser may be deemed a bona
fide purchaser without notice ... In the event that occurs, Plaintiff pleads
in the alternative for damages." (*Id.*)

Plaintiff's allegations of inequity rely on factual circumstances the veracity of which is simply lacking in factual and evidentiary support.  As no jury could return a verdict for Plaintiff on Count II, the Court grants summary judgment for Defendant.

### 3. <u>Count III: Fraud</u>

With regard to their allegations of fraud, Plaintiff argues that "[g]iven the factual allegations of this Amended Complaint, it is clear Deutsche Bank has committed blatant fraud in an attempt to sell this house, profit from said sale, and seek dismissal of the Original Complaint." (AC 11.)  Plaintiff seeks an award of costs and damages against Deutsche Bank for "reckless disregard for the law, for this Court, for the blatant fraud committed in documents of record, in pleadings before this Court, in the Affidavit filed with this Court in support of the Motion to Dismiss, for unlawfully foreclosing on her home, and for claiming authority it knew that it did not have." (*Id.*)

Virginia law recognizes both actual and constructive fraud. *See, e.g., Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 690 (E.D.Va. 1990)(citing *Moore v. Gregory*, 146 Va. 504, 131 S.E. 692 (1925)).  Constructive fraud is "a breach of legal or equitable duty, which, irrespective of moral guilt ... the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public

interests." *Moore*, 131 S.E. at 697. Thus, constructive fraud does not require scienter or intent to mislead; it can be established whether the representation is innocently or knowingly made. *Obenauer*, 736 F. Supp. at 690; *see also Chandler v. Satchell*, 160 Va. 160 (1933); *Mears v. Accomac Banking Co.*, 160 Va. 311 (1933). In contrast, to prove actual fraud, a plaintiff must show (i) a false representation by defendant, (ii) of a material fact, (iii) made intentionally and knowingly, (iv) with intent to mislead, (v) reliance by the misled party, and (vi) resulting injury to the party misled. *Pennsylvania Life Ins. Co. v. Bumbrey*, 665 F.Supp. 1190, 1200 (E.D.Va. 1987); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D.Va. 1986); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 315 (1984).

The Court believes that its preceding analysis has, in large part, dispensed with much of the basis for Plaintiff's allegations of fraud on the part of Defendant, as there has been no showing by Plaintiff that Defendant exceeded their legal rights in connection with the subject loan. The remainder of Plaintiff's allegations is completely contradictory to the undisputed facts evidenced by sworn affidavits and supporting documents. The Court has also found that, contrary to the allegations of Plaintiff, Defendant was the owner and holder of Plaintiff's Note at the time of foreclosure. The Court has found that Wittstadt was properly appointed substitute trustee by

Defendant, who was empowered to make such an appointment by the Note and Deed of Trust. The Court reiterates that it has rejected Plaintiff's allegations of documentary fraud, having found them to be conclusory, factually unsupported, and lacking evidentiary corroboration. Additionally, the Court has not found that any "fraud of the Court" has occurred either through Defendant's pleadings or through their movement for dismissal of the Amended Complaint. (AC 6.) The Court finds Plaintiff's allegations that Defendant committed fraud in endeavoring to "sell this house, profit from said sale, and seek dismissal of the Original Complaint" to be unsupported and conclusory, and Plaintiff has not come forward with any evidence to show that Defendant has done anything other than exercise their lawful rights. (AC 11.)

Plaintiff has provided insufficient citation to sources or material capable of supporting their allegations of fraud. Indeed, Plaintiff has not provided any affidavits or named other credible evidence supportive of those allegations. There is no genuine issue of material fact as whether Defendant has committed fraud and no jury could return a verdict for Plaintiff. Consequently, the Court grants summary judgment in favor of Defendant as to Count III.

### 4. Count IV: Unjust Enrichment

Count IV represents a continuation of the Plaintiff's objections to the foreclosure of their property and payments associated with the subject loan. In addition to the other allegations of the Amended Complaint, Plaintiff argues that, based on the 2011 Assignment and Defendant's appointment of Wittstadt as substitute trustee, "Defendant sold Plaintiff's home - essentially stole Plaintiff's Property, sold it to the highest bidder, which resulted in her eviction from the Property." (AC 13.) Plaintiff further contends that "Deutsche Bank sold the Property at auction and took the profits for its own use and benefit, when it was not entitled to said profits." (*Id.*)

Under Virginia law, unjust enrichment is a quasi-contract claim based on equity. *See Kern v. Freed Co.*, 224 Va. 678, 680-81 (1983). Under Virginia law, the elements of unjust enrichment are (1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that "render it inequitable for the defendant to retain the benefit without paying for its value." *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D.Va. 2005).

The Court has already granted summary judgment in favor of Defendant on Plaintiff's foregoing causes of action and

explained in its analysis that Plaintiff's allegations of impropriety are simply unsupported by the record.  Similarly, the Court believes that no reasonable jury could return a verdict for Plaintiff as to Count IV, as there has been no showing that Defendant exceeded their rights with regard to the subject loan.  To the extent that Plaintiff relies on the securitization of the loan as a basis for the cause of action for unjust enrichment, Plaintiff's cause of action must fail.  Such securitization was neither unlawful nor unauthorized by the terms of the Note or Deed of Trust.  Furthermore, the Court has not been apprised of any substantive reason why Defendant, as owner and holder of the Note, would not have been entitled to initiate foreclosure proceedings.  The Court also notes that, although Plaintiff implies in the Amended Complaint that payments were made on the subject loan, Plaintiff has not detailed any of the factual circumstances surrounding any of those payments.  Without having been apprised of the factual circumstances surrounding the alleged payments, there is simply no means for the Court to evaluate Plaintiff's argument that any such payments have allegedly been misappropriated.

In addition, Plaintiff argues that Defendant and those working at their behest "denied Plaintiff the opportunity to deal with the true owner of her loan and work out an alternative to foreclosure ... perhaps committed fraud on the true owner

(the FDIC), and through its fraudulent actions has been unjustly enriched."[32] (*Id.*)  It is not clear in what manner Plaintiff was "denied Plaintiff the opportunity to deal with the true owner of her loan." (*Id.*)  Plaintiff was notified in writing that the IndyMac 2006-1 Trust, for which Deutsche Bank serves as Trustee, was the legal and lawful owner of Plaintiff's Note.  To the extent that Plaintiff believes that any other wrongdoing on the part of Defendant denied Plaintiff an opportunity to discuss an alternative to foreclosure, the Court finds that wrongdoing to be insufficiently delineated by Plaintiff in their pleadings or otherwise.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss and/or for Summary Judgment, granting summary judgment in favor of Defendant as to Count I, Count II, Count III, and Count IV of the Amended Complaint.

An appropriate Order will issue.

/s/
_____
May 30, 2013                           James C. Cacheris
Alexandria, Virginia         UNITED STATES DISTRICT COURT JUDGE

---

[32] Despite the representation that the FDIC is the "true owner," an argument that this Court has rejected in its foregoing analysis, Plaintiff essentially stated at hearing that they were unsure of the identity of the owner or owners of either the Note or Deed of Trust at the time Plaintiff's property was foreclosed.